CASE NO.: 25-60625

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

WENDY GORE

*Plaintiff/Appellant*

vs.

STATE FARM FIRE & CASUALTY COMPANY
AND JOHN DOES A, B, AND C

*Defendants/Appellees*

***ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI, GREENVILLE DIVISION***
Civil Action No. 4:24-cv-00027-DMB-DAS
Honorable Debra M. Brown, United States District Judge

**APPELLANT'S BRIEF**

Philip Mansour, Jr., Esq. (MSB # 1857)
Mansour & Adams
143 North Edison Street
P.O. Box 1406
Greenville, MS 38702-1406
Telephone: (662) 378-2244
Facsimile: (662) 378-2246
Email: phil@mansouradams.com

Britt Virden, Esq. (MSB #10022)
VIRDEN LAW FIRM, PLLC
143 N. Edison Street
P.O. Box 1871
Greenville, MS 38702-1871
Telephone: (662) 378-9466
Facsimile: (662)378-2246
E-mail: bvirden@virdenlawfirm.com

# CERTIFICATE OF INTERESTED PERSONS

1. Parties:

Appellant Name: Wendy Gore
Appellee Name: State Farm Fire & Casualty Company

2. Trial Judge:

The Honorable Debra M. Brown, United States District Judge

3. Attorneys for Plaintiff - Appellant

Philip Mansour, Jr., Mansour and Adams, Counsel for Plaintiff - Appellant
Britt Virden, Esq., Virden Law Firm, PLLC, Counsel for Plaintiff-Appellant

4. Attorneys for Defendant - Appellee

Michael F. Myers, Esq., Currie, Johnson & Myers, P.A., Counsel for Defendant/Appellee

5. Corporate Disclosure (Fed. R. App. P. 26.1)

State Farm is a corporation. It has no parent corporation, and no publicly held company owns 10% or more of its stock.

Respectfully submitted,

/s/Philip Mansour, Jr.
MANSOUR & ADAMS
143 North Edison Street
P.O. Box 1406
Greenville, MS 38702-1406
Telephone: (662) 378-2244
Facsimile: (662)378-2246
Email: phil@mansouradams.com

Counsel for Plaintiff-Appellant

February 26, 2026

## STATEMENT CONCERNING ORAL ARGUMENT

Plaintiff Wendy Gore and her counsel request the opportunity to conduct oral argument on this appeal before the Fifth Circuit Judges. Plaintiff submits the Appellant's Brief and argument are complete but oral argument would allow counsel and the Court to address specific questions and pinpoint exhibits which support Plaintiff's request to reverse and vacate the improper Order and Opinion granting summary judgment from the District Court.

## TABLE OF CONTENTS


1. Table of Authorities . . . . . 2
2. Jurisdictional Statement . . . . . 3
3. Issues Presented for Appellate Review . . . . . 4
4. Statement of the Case. . . . . . 5
    - Procedural History . . . . . 5
    - Facts . . . . . 6
    - Plaintiff's Credible Evidence of Her Personal Property Losses . . . . . 8
    - Plaintiff's Credible Evidence of a Full Dwelling Loss Due to the Total Destruction of Her Home Either Due to Fire or Smoke Damage . . . . . 9
    - District Court's Violation of Summary Judgment Standard . . . . . 11
    - District Court Overstepped Authority and Misuse of the Appellate Rules of Procedure in Ruling on Summary Judgment . . . . . 12
5. Summary of Appellant's Argument . . . . . 15
6. Argument . . . . . 16
    - Summary Judgment Standard . . . . . 16
    - Breach of Contract Claim-Personal Property Insurance Coverage . . . . . 17

Breach of Contract Claim- Dwelling Insurance Coverage . . . . . . . . . . . . . . . . . . . 21

Expert Testimony Not Necessary to Prove Total Dwelling Loss . . . . . . . . . . . . . . 23

Bad Faith Claims Handling Claim Not Subject to Summary Judgment. . . . . . . . . 24

History of Bad Faith Litigation in Mississippi . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Misrepresentation Not Subject to Summary Judgment. . . . . . . . . . . . . . . . . . . . . . 28

7. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## 1. TABLE OF AUTHORITIES

### A. CASES

1. *Adams v. Traveler's Indem. Co of Conn*., 465 F.3d 156 (5th Cir 2006) . . . . . . . . . . . . 13

2. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1949) . . . . . . . . . . . . . . . . . . . . . . . . 18

3. *Bankers Life and Casualty Company v. Crenshaw*, 483 So.2d 254 (Miss. 1985). . . . 27

4. *Berkline Corp. v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss. 1984). . . . . . . . . . 28

5. *Brown v. City of Houston*, 337 F.3d 539 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 15

6. *Bus. Comm., Inc. v. Banks*, 90 So.3d 1221, 1225 (Miss. 2012) . . . . . . . . . . . . . . . . . 19

7. *Celatex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8. *Great So. Nat. v. McCullough Env. Serv.*; 595 So.2d 1282 (Miss. 1992) . . . . . . . . . . 27

9. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021) . . . . . . . . . . . . . 18, 20

10. *Hanks v. Rogers*, 853 F. 3d 738 (5th 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

11. *Jackson v. State Farm Fire & Cas. Co.*, No 1:23-cv-24, 2024 WL 1183670 (S.D. Miss. Mar. 19, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

12. *Little v. Liquid Air Corp*., 37 F.3d 1067 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 15

13. *Monsoor v. Fidelity Life Assn*., 3:23-cv-04-(Order dated Mar. 31, 2025) . . . . . . . . 18

14. *Nall v. BSNF Railway Co.*, 917 F.3d 335 (5 th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . 18

15. *Pippen v. Tronox, LLC,* 359 F. Supp.3d 440 (N.D. Miss. 2019) . . . . . . . . . . . . . . . . 15

16. *Pursue Energy Corp. v. Perkins*, 558 So.2d 349 (Miss. 1990) . . . . . . . . . . . . . . . . . 28

17. *Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 12

18. *Schnell v. State Farm Lloyds*, 98 F.4th 150 (5th Cir. 2024) . . . . . . . . . . . . . . . . 11, 12

19. *Skrmetta v. Bayview Yacht Club*, 806 So.2d 1120 (Miss. 2002) . . . . . . . . . . . . . . . . 28

20. *Spragins v. Sunburst Bank*, 605 So.2d 777 (Miss. 1992) . . . . . . . . . . . . . . . . . . . . . 28

21. *Standard Life Insurance Company v. Veal*, 354 So.2d 239 (Miss. 1977).. . . . . . . . . . 27

**B. STATUTES AND RULES**

1. FED. R. CIV. P. 56 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

2. FED. R. CIV. P. 9 (2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

3. MISS CODE ANN. §11-1-65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

**C. OTHER AUTHORITIES**

1. 6 MOORE'S FEDERAL PRACTICE, § 56.1, *et. seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2. Jackson, Jeffrey, *Miss. Insur. Law Practice* §13: 1 (2009).. . . . . . . . . . . . . . . . . . . . 26

3. Miller, Mary *Encyclopedia of Mississippi Law,* §40: 77 (2001) . . . . . . . . . . . . . . . . . 27

## 2. JURISDICTIONAL STATEMENT

The 5th Circuit Court of Appeals has jurisdiction over this appeal because the underlying case originated in the United States District Court for the Northern District of Mississippi - Greenville Division, District Judge Debra Brown presiding. This appeal is from the District Court's Final Judgment dated October 16, 2025. Jurisdiction was established in the lower Court via 28 USCA § 1332 under diversity of citizenship because Plaintiff Wendy Gore is an adult resident citizen of Bolivar County in the State of Mississippi and Defendant State Farm is a

corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Illinois. The amount in controversy exceeded $75,000. This appeal is from the Opinion and Order entered by Judge Brown granting summary judgment dated September 30, 2025 and her Final Judgment entered on October 16, 2025. Plaintiff Gore filed her Notice of Appeal on November 10, 2025.

## 3. ISSUES PRESENTED FOR APPELLATE REVIEW

A. Whether the District Court violated the strict standard to grant summary judgment under Rule 56 when she made factual findings, credibility determinations and final rulings on genuine issues of material fact that should have been decided by the jury in Plaintiff's homeowner's insurance breach of contract case?

B. Whether the District Court violated the strict standard to grant summary judgment under Rule 56 when she made factual findings, credibility determinations and final rulings on genuine issues of material fact under Plaintiff's separate claims for bad faith and misrepresentation?

C. Whether the District Court erred by not considering the Plaintiff's credible evidence submitted in response to the motion for summary judgment in the light most favorable to Plaintiff in her breach of contract, bad faith and misrepresentation claims?

D. Whether the Plaintiff's claims for breach of contract on the remaining amounts owed under her homeowner's insurance policy limits with Defendant for dwelling and personal

property coverage, along with Plaintiffs' claims for bad faith and misrepresentation should be remanded for a full jury trial?

E. Whether the District Court overstepped her authority in the September 30, 2025 Order and Opinion by ruling that Plaintiff forfeited all arguments in opposition to the motion for summary judgment and that Plaintiff's credible evidence would not be considered before deciding on the motion?

## 4. STATEMENT OF THE CASE

### A. Procedural History

This appeal arises from a lawsuit filed by the Plaintiff Wendy Gore against Defendant State Farm on March 13, 2024 in the United States District Court for the Northern District of Mississippi, Greenville Division before the Honorable District Court Judge Debra Brown. In the *Complaint* Plaintiff sought damages for breach of contract, punitive damages for bad faith insurance claims handling, misrepresentation and breach of Plaintiff's right to privacy. [ROA.8-18]. Following discovery Defendant State Farm filed a Motion for Summary Judgment [ROA.105-115] with extensive exhibits [ROA.116-650] and a *Memorandum in Support* [ROA.651-673] on February 24, 2025. Plaintiff filed her *Response in Opposition to the Motion for Summary Judgment* [ROA.735-738] on May 8, 2025, with supporting exhibits [ROA.739-1478] and a *Memorandum in Opposition to the Motion for Summary Judgment*. [ROA.2295-2315]. The District Judge without a hearing or oral argument on the motion issued her *Order and Opinion* on September 30, 2025 granting summary judgment to State Farm on all of

Plaintiff's claims, except for one smaller remaining claim for breach of contract for outstanding living expenses insurance coverage which totaled approximately $46,000. [ROA.2230-2247]. Plaintiff then filed a *Petition for Permission to Appeal* on October 8, 2025 rather than conduct a three to four day trial on the one remaining living expenses insurance coverage claim permitted by the District Court for the trial setting of October 20, 2025. [ROA.2246-2255]. That request for appeal by permission was denied pursuant to a subsequent telephonic conferences with the District Judge and an agreement among the parties to waive the smaller living expenses insurance claim so that the full case and all of Plaintiff's remaining claims could be appealed at one time. The parties then entered into a *Stipulation of Dismissal of Plaintiff's Remaining Claims* on October 16, 2025. [ROA. 2332-2333]. Thereafter the District Judge entered her *Final Judgment* on October 16, 2025 and the pending trial was canceled. [ROA.2334]. Plaintiff timely filed her *Notice of Appeal* on November 10, 2025 and this action is now pending before this Honorable Court. [ROA.2335]. Plaintiff seeks *de novo* appellate review of the District Court's September 30, 2025 Order and Opinion granting summary judgment with an Order to reverse and vacate such Order so that Plaintiff's claims for breach of insurance contract for her remaining coverage limits for her dwelling and personal property coverage can be tried to the jury - along with her separate claims for punitive damages for State Farm's bad faith insurance claims handling and her claim of misrepresentation.

**B. <u>Facts</u>**

On March 9, 2023 Plaintiff Wendy Gore's home located at 197 Highway 8, Cleveland, Mississippi was destroyed by fire. As a result of the devastating fire, Plaintiff lost the entire structure of her home, as well as all of her personal property and contents, and was forced to find another place to live while her home was rebuilt. [ROA. 1160-1190] Ms. Gore purchased

insurance Policy Number 24-BW-Q437-9 from Defendant State Farm Fire and Casualty Insurance Company for her home beginning on March 10, 2021, with annual renewals thereafter. [ROA.19-60; 116-170] At the time the fire occurred Ms. Gore was out of town at a doctor's appointment but immediately returned and began assessment of the fire and her total loss. Ms. Gore provided prompt notice of the fire to State Farm and Defendant sent an adjuster, Damian Stroud, for an initial inspection the next day.

Over the course of the next few months Ms. Gore provided statements to State Farm and produced numerous documents, photographs, loss inventories, reports and spread sheets requested by Defendant to verify her insurance claim. The documents included the fire report from the local fire department [ROA 827-835]; detailed loss inventories of personal property lost in the fire [ROA.836-848]; receipts of personal property purchased with Customer History from website such as Amazon, PayPal or other internet merchants [ROA 961-1000]; photographs of the home and the contents both before [ROA 781-795] and after the fire including a photographic home inventory depicting the personal property Plaintiff had in her home before the fire occurred. [ROA.796-826]. Plaintiff also obtained a detailed quote and contract from her contractor who was hired to re-build her home, Watermark Group. That contract provided State Farm the full details of the new construction project and exact costs to replace the home including re-design, square footage and all features of Plaintiff's new home, which totaled over $650,000.00. [ROA.1344-1358]. During the extended adjusting period which dragged on for many months, Plaintiff had numerous conversations with State Farm's adjuster assigned to the claim, Damian Stroud, and other adjusters for State Farm and exchanged numerous correspondence, text messages [ROA 1310-1340], emails other documents concerning the lengthy claims handling process with production of information requested by the various

adjusters' numerous requests. [ROA.1392-1401]. When State Farm alleged the dwelling was not a total loss, Plaintiff provided a report from her contractor who confirmed the small storage room that remained after the fire was not able to be salvaged because there was too much smoke damage. [ROA.1359]. Towards the end of the adjusting process State Farm even asked Plaintiff for private financial data such as her monthly bank account statements and tax returns to determine if she had the "means" to purchase the personal property which she lost in her home. Of course, such request was improper and ironic because the Plaintiff's personal property was clearly depicted in the Plaintiff's photographic home inventory already provided and Farm Bureau had already approved the homeowner's policy and specific limits of insurance coverage via its underwriting process in 2021. [ROA.1392-1398]. Plaintiff also has recorded telephone conversations with Damian Stroud in which he makes admissions about the request for private information and related statements about the delay in the adjusting process and documents she produced in full cooperation with Farm Bureau.

State Farm partially paid Plaintiff for her dwelling, personal property and living expenses insurance coverage but then refused to pay additional sums, forcing Plaintiff to hire legal counsel to obtain the benefits of her insurance contract. Even after correspondence from Plaintiff's counsel, State Farm failed to pay for the balances owed under her insurance contract. [ROA.1341-1342]. This required Plaintiff to file a lawsuit against State Farm because of its breach of contract and improper refusal to pay the full insurance coverage limits for the three separate types of insurance Ms. Gore purchased; 1) Dwelling; 2) Personal Property; and 3) Living Expenses. When Plaintiff filed her Complaint the total amounts owed included $229,171 for her outstanding personal property insurance loss; $76,012.28 for dwelling loss and $46,000 for living expenses. Several months after the lawsuit was filed, following Plaintiff's deposition,

Farm Bureau decided to provide additional partial payments which totaled $36,097.25 for personal property losses and $299.59 for the dwelling, even though such additional payments were made two (2) years after the subject fire and only because Plaintiff forced State Farm's hand and filed her lawsuit. [ROA.1402-1406]. All of Plaintiff's evidence was submitted to the District Court in response to the Motion for Summary Judgment, but Judge Brown refused to consider this evidence and improperly granted summary judgment to State Farm.

### C. Plaintiff's Credible Evidence of Her Personal Property Losses

Prior to the fire Ms. Gore possessed a detailed home inventory with dozens of photographs which depicted the type, condition, model and description of her furniture, appliances, equipment, clothing, tools and related personal property located in her home, which she provided to State Farm. [ROA. 836-848]. After the fire State Farm asked Ms. Gore to prepare a spreadsheet which they identified as a "Loss Inventory" to identify the personal property she lost in the fire with an estimate of the actual cash value assigned to each item and related information such as location in the home. [ROA.836-848]. Plaintiff promptly complied with State Farm's request and provided a detailed spreadsheet of her personal property lost which showed the actual value of her personal property destroyed by the fire was over $650,000.00, even though the limits of coverage for personal property in the insurance contract was $380,650. [ROA.849-861]. Ms. Gore also provided State Farm supplemental personal property loss inventories and additional information, such as handwritten notes, recent internet searches of personal property purchased with receipts as well as multiple years of a Customer History from internet merchants such as Amazon or PayPal to further explain the details and actual cash value of the personal property lost and/or the current costs of replacement. [ROA.889-907].

Despite this extensive proof of the personal property loss, which was well on excess of the contract's policy limits, State Farm willfully refused to pay Plaintiff her entire personal property insurance coverage of $380,650. This failure to pay by State Farm is a clear breach of contract because the preponderance of the evidence shows Plaintiff is entitled to receipt of her full personal property insurance limits. For its defenses State Farm disputes the amounts owed for personal property and alleges Plaintiff failed to cooperate during the prolonged adjusting process. Plaintiff disputes State Farm's allegations which therefore proves there are genuine issues of material fact that are not subject to summary judgment.

### D. Plaintiff's Credible Evidence of a Full Dwelling Loss Due to the Total Destruction of Her Home Either Due to Fire or Smoke Damage

In response to the allegation from State Farm that Plaintiff's home was not a total loss, Plaintiff produced credible evidence which would establish her position the home was totally destroyed by fire and any portions of the structure that was left standing had non salvable smoke damage and was not able to be repaired. This evidence included numerous photographs showing the home almost completely burned to ash via multiple camera angles, [ROA.781-796] with the lone exception for one portion of a small storage room off of the garage (which also sustained confirmed smoke damage); witness testimony and reports from Plaintiff's contractor, Watermark Group and Ted Blockett, that the home was a total loss and the storage room could not be repaired or salvaged [ROA.1359]; pending witness testimony from the Fire Chief Matt McNutt and Assistant Fire Chief Gentle Calhoun that the house was destroyed by fire as shown by the fire reports [ROA.781-796]; Plaintiff's personal knowledge and observations and testimony from her deposition [ROA.1153-1308] and related inferences from such evidence.

Despite the evidence in support of the full dwelling loss claim, the District Judge

accepted as true disputed facts proffered by State Farm concerning whether the Plaintiff's home was destroyed by fire and therefore total loss. In her Order and Opinion the District Judge quoted the initial observations of Plaintiff's adjuster Damon Stroud which she found was recorded the day after the fire that allegedly found "some salvageable damage" to portions of the right side of the home; some "repairable damage" to other areas of the home and "no damage on the left side of the home." [ROA.2235-2236]. Moreover, the improper award of summary judgment in favor of State Farm prevented Plaintiff from cross-examining Adjuster Stroud on his non-credible observations that there was "no damage to the left side of the home" or that there was "some salvageable damage to the right side of the home" when the clear photographs from Plaintiff show near complete destruction of all portions of the home. *Id.* Plaintiff submits this credible evidence presented to the District Judge in response to the Motion for Summary Judgment creates a genuine issue of material fact whether the house was a total loss or not. Pursuant to long-established precedent a reasonable jury could consider all evidence offered by the Plaintiff at trial and find in favor of Plaintiff that she is owed the remainder of the policy limits. It is also critical to note that Adjuster Damon Stroud is not an expert witness yet the District Judge seemed to accept his factual observations as conclusive proof that parts of the home was "salvageable' even though he is not an engineer or home builder. [ROA.2185-2199]. The report of Ted Blockett and the Watermark Group is further evidence that whether the home was a total loss or small portions of the remaining structure could be salvaged but under any scenario creates a genuine issues of material fact that is not subject to summary judgment. [ROA.1359]. Perhaps most significant, Damian Stroud admitted in his deposition that the storage room left standing on the property still had "smoke damage" [ROA.2192]. Mr. Stroud should have been cross-examined at trial on these admissions so the jury could make the

credibility determinations required under our rules and precedents.

**E. District Court's Violation of Summary Judgment Standard**

In her September 30, 2025 Order and Opinion the District Judge specifically made factual determinations of what evidence she believed was "credible" even though she was only presented a motion for summary judgment. For example, under the dwelling coverage claim the District Judge ruled Plaintiff "has not provided competent evidence" to create a genuine issue of material on the extent of the structural damage. [ROA.2239]. With this ruling the District Court failed to weigh the evidence submitted by Plaintiff in the light most favorable to Plaintiff under Rule 56. Indeed it appears the lower Court gave greater credibility and weighed the evidence submitted by State Farm more favorable than Plaintiff's same submissions. For instance, Judge Brown admitted she disregarded Plaintiff's evidence, as discussed below, because she stated Plaintiff's Memorandum of Authorities did not make specific page citations to exhibits with case citations, but then made added footnote number 9 in which she confirmed State Farm's Memorandum made the same type arguments and broad citations without specific page references in its briefing. [ROA. 2233]. Conversely, Judge Brown accepted State Farm's exhibits as credible while making an improper ruling that Plaintiff "forfeited" her arguments and expressly stated that Plaintiff's evidence in response to the motion for summary judgment "would not be considered." [ROA.2232-2234]. She further deemed she would not even consider the deposition testimony of State Farm's adjuster Damian Stroud even though it was properly submitted for her consideration as credible evidence under the Rules and contained critical admissions as the adjuster handling the claim for State Farm. [ROA.2232]. In making these credibility determinations and weighing the facts, Plaintiff submits the District Judge misapplied the strict standard to grant summary judgment under Rule 56 and her Order and Opinion should

be vacated and the case remanded for a full trial on all remaining claims.

**F. <u>District Court Overstepped Authority and Misuse of the Appellate Rules of Procedure in Ruling on Summary Judgment</u>**

Plaintiff submits the District Court overstepped her authority and misused rulings which govern appeals to the Fifth Circuit Courts of Appeals, or other jurisdictions, rather than apply the Federal Rules of Civil Procedure for considerations before ruling on a motions for summary judgment under Rule 56. FED. R. CIV. P 56 (2025). In her September 30, 2025 Opinion and Order Judge Brown deemed that Plaintiff "forfeited her arguments in defense of summary judgment" because the Plaintiff's Response in Opposition to State Farm's Motion for Summary Judgment did not contain specific page citations to evidence submitted by Plaintiff to demonstrate a genuine issue of material fact under Rule 56. [ROA.2232-2234]. Thereafter, the lower Court specifically ruled that "none of Plaintiff's arguments would be considered" when she made her ruling on the Motion for Summary Judgement. *Id*. Plaintiff disagrees with the mis-characterization of her Memorandum and case citations because a plain reading of the Motion and *Memorandum in Opposition* show numerous case citations and specific references to multiple exhibits that demonstrate genuine issues of material fact.

In support of her improper ruling, the District Court cited to cases and authorities in which the Fifth Circuit Court of Appeals may disregard arguments in a case already on appeal, or to other jurisdictions, that do not apply to a District Court when considering a motion for summary judgment. For example, Judge Brown cited *Schnell v. State Farm Lloyds*, 98 F.4th 150 (5th Cir. 2024) for presumed authority which would allow her to forfeit arguments on a summary judgment motion in which the opposing party failed to raise challenges to the motion in the District Court. However, the *Schnell* decision was clear that the 5th Circuit Court of Appeals

ruled that way on a unique set of facts presented by the *Schnell* case that only applied to Chapter 541 of the Texas Insurance Code. *Id* at 161. The *Schnell* decision further confirmed established Rules of Appellate procedure that an appellant may forfeit arguments on an appeal to this Court when the appellant submits arguments "for the first time on appeal" but that factual scenario is entirely distinguishable from the facts of Plaintiff Gore's case herein. *Id.* Most significant, Plaintiff Gore submitted her arguments and evidence challenging summary judgment to the District Court and is not raising a challenge to summary judgment on appeal for the first time. Furthermore, this case is governed by Mississippi law and not the Insurance Code of Texas. In fact, the *Schnell* decision reversed summary judgment improperly granted to the insurance carrier on a similar breach of contract case of a homeowner's insurance policy because the homeowner presented credible evidence of genuine issues of material fact that were improperly deemed as established fact in violation of the standard which governed summary judgment. *Id.* at 161. Just as in *Schnell*, Plaintiff Gore requests the District Court's improper summary judgment order be vacated and this case remanded for further proceedings of a full trial in the District Court.

Likewise, the District Judge improperly relied on *Rollins v. Home Depot USA*, 8 F.4th 393 (5th Cir. 2021), to deem Plaintiff "forfeited" her arguments and evidence presented in opposition to the Motion for Summary Judgment. *Rollins* is another decision focused on appellate rules rather than Federal Rules of Civil Procedure or Rule 56 in particular. *Id*. *Rollins* is clearly distinguishable from Plaintiff's Gore's case because the Plaintiff herein submitted citations and credible evidence of disputed material facts to the District Court under Rule 56. Again, Plaintiff submits the District Court overstepped her authority in her Order and Opinion because the *Rollins* opinion does not permit her to disregard Plaintiff's evidence in response to

the motion.

Plaintiff submits the District Court's admitted failure to even consider Plaintiff's arguments or disputed evidence in her summary judgment ruling is a direct violation of Rule 56 and clear grounds for reversal. Indeed, Rule 56 requires the District Court to consider all evidence submitted by the Plaintiff in this case "in the light most favorable to the nonmoving party." Not only did the District Judge not consider the Plaintiff's evidence in her favor, she specifically ruled the evidence presented was "forfeited" and none of the arguments "would be considered" when she made her ruling on the motion for summary judgment.

Next, the Plaintiff did not request the District Court to "sift through" evidence to find a genuine issue of material fact or fail to cite "page numbers" for the lower court to review as claimed in the September 30, 2025 Order and Opinion. citing, *Adams v. Traveler's Indem. Co of Conn*., 465 F.3d 156 (5th Cir 2006). Indeed, the evidence Plaintiff submitted included dozens of photographs showing near complete destruction of the home from various camera angles which did not have page numbers to reference. A reasonable juror could view these photographs and decide whether the home was a complete loss or not and Plaintiff submits it would not take much time to sift through this strong evidence in order to come to a decision. Furthermore, Plaintiff's evidence of property losses was detailed in Loss Inventories, spreadsheets, receipts, pre-fire photographs and related evidence. This is the type of detailed and credible evidence which Plaintiff will present to the jury so they can weigh all of the disputed facts and adjudicate whether State Farm breached their contract after a full presentation of all evidence at trial.

Interestingly, the District Judge acknowledged in a footnote #9 that State Farm did not provide cites to "some of its exhibits referenced in its brief" but on such occasions there were a "low number of pages" in the State Farm exhibit or the "entirety of the exhibit is pertinent to the

matter for which it was cited." [ROA.2233]. The lower Court did not further explain why she shifted through State Farm's exhibits when she refused to consider Plaintiff's exhibits but on appeal Plaintiff submits it was erroneous for the District Judge not to consider Plaintiff's evidence in the light most favorable to Plaintiff under Rule 56. Indeed, many of the citations made by Plaintiff in her *Memorandum in Opposition* were to exhibits which contained a low number of pages or which contained detailed spreadsheet and details directly relevant to Plaintiff's property damage claims. Otherwise, the entirety of Plaintiff's exhibits were pertinent to the matter for which they were cited such as photographs from before and after the fire; or the actual cash value of the costs to replace her home from detailed quote/contract from Plaintiff's contractor and her multiple Loss Inventories.

## 5. SUMMARY OF APPELLANT'S ARGUMENT

The September 30, 2025 Order and Opinion of District Judge Debra Brown granting Defendant State Farm summary judgment should be reversed with an order vacating such decision and then the case remanded for a full trial on Plaintiff's breach of contract claims, bad faith claims handling claims and misrepresentation. In her Order the District Judge violated the strict standard for granting summary judgment under Rule 56 because she made improper credibility determinations and weighed the evidence herself on what she believed was competent evidence or not. Second, the District Court failed to consider the credible evidence from Plaintiff in the light most favorable to Plaintiff and, most critical, the lower Court failed to draw all reasonable inferences in favor of Plaintiff. The lower Court further overstepped its authority and deemed she would not consider Plaintiff's arguments and evidence submitted in opposition to the Motion for Summary Judgment because Plaintiff allegedly forfeited her factual

submissions which in fact created genuine issues of material fact that prevented summary disposition. These improper rulings were based on case law that was not applicable to the District Court when considering a motion for summary judgment. Plaintiff submitted extensive evidence which creates genuine issues of material fact in response to the motion for summary judgment and those issues should be tried to the jury at a full trial upon remand.

## 6. ARGUMENT

**Summary Judgment Standard**

> *The Federal Rules of Civil Procedure* states that summary judgment shall be granted:
>
> if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> FED. R. CIV. P. 56 (2025).

The Fifth Circuit reviews a grant of summary judgment *de novo*. *Brown v. City of Houston*, 337 F.3d 539 (5th Cir. 2003). In reviewing the evidence, factual controversies are to be resolved in favor of a non-movant, "when … both parties have submitted evidence of contradictory facts.'" *Little v. Liquid Air Corp*., 37 F.3d 1067 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Pippen v. Tronox, LLC,* 359 F. Supp.3d 440 (N.D. Miss. 2019). Plaintiff submits that is what the District Court did in her September 30, 2025 Order and Opinion. It is well accepted that that "[i]f there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial." *Id*. at 363, *citing* 6 MOORE'S FEDERAL PRACTICE, § 56.1, *et. seq*. "[S]ummary judgment, in whole or in part, should be granted with great caution."

Most important, when entertaining a motion for summary judgment, "[a]ll evidentiary matters are viewed in the light most favorable to the party against whom the motion has been made." *Celatex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 4 Fed. R. Serv. 3d 1024 (1986).

**A. Breach of Contract Claim - Personal Property Insurance Coverage**

The largest breach of contract committed by State Farm falls under insurance coverage for Ms. Gore's Personal Property losses. The subject insurance contract provides that State Farm will

> cover personal property owned or used by an inured while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming part of the realty . . . will pay for the accidental direct physical loss to the property described in Coverage B [personal property] caused by the following perils . . . 1. Fire . . . 7. Smoke . . .
>
> [ROA.131-139].

Under the terms of the insurance policy, Ms. Gore purchased policy limits of $380,850.00 for her Personal Property insurance coverage limits prior to the fire. [ROA.118]. State Farm refused to pay Ms. Gore the full insurance payments she is owed for her personal property which she owned or used that was lost in the subject fire or had smoke damage, despite the fact she provided multiple loss inventories, spreadsheets, supplementation, receipts, photographs, statements and related information which conclusively established her full claims. Prior to the fire Ms. Gore prepared a detailed home inventory with dozens of items and multiple photographs which showed the condition, model and description of her personal property in the home, including photographs of furniture, appliances, equipment, clothing, tools and related personal property. Plaintiff provided this pre-fire home inventory to State Farm and to the District Court in response to the motion for summary judgment. [ROA. 796-826]. After the fire

Ms. Gore complied with State Farm's numerous request to provide and supplement her personal property losses which included credible evidence of a detailed spreadsheet of her personal property which was lost in the fire via a photographic home inventory. [ROA.836- 859]. Both spreadsheets showed full and complete details of the property loss Plaintiff suffered with a description of the personal property lost, location in the home and Plaintiff assigned a actual cash value to each item, among other information, per the request of State Farm. *Id.* Furthermore, Plaintiff supplemented the detailed spreadsheets with handwritten notes and calculated the total personal property loss was over $650,000.00. [ROA.806]. Ms. Gore also provided additional photographs of the lost personal property and current actual cash value to replace such items via internet searches, Customer Histories or prior purchases, receipts and example photographs of such items . [ROA.889-907 ]. In order to further explain the items and actual cash value, Plaintiff had numerous telephone conversations with State Farm adjusters and there are multiple text messages [ROA.1310-1340] and email exchanges showing actual cash value of her personal property which was lost in the fire. [ROA.906-918; 961-1000].

Despite production of this evidence to the District Judge in response to the Motion for Summary Judgment, the District Judge summarily denied Plaintiff's breach of contract claim. In her September 30, 2025 Order and Opinion, the District Court ruled that Ms. Gore "failed to comply with State Farm's reasonable requests to provide financial information" and that State Farm did not exceed what it "deemed necessary to satisfy itself of Gore's financial position" and therefore State Farm was entitled to summary judgment on the balance owed on Gore's personal property breach of contract claim. [ROA. 2266]. Plaintiff submits this ruling is erroneous and a direct violation of the standard for granting summary judgment. First, the District Judge's order violates Rule 56 because she is making a "credibility determination" after "weighing the

evidence" herself on what type of document production or level of cooperation was "reasonably requested" of Plaintiff. The decision on what amount of document production, the type of documents requested such as personal information or "level of cooperation" which can be considered "reasonable" are all disputed issues of material fact that is left to the discretion and ultimate decision by the jury rather than an order for summary judgment. *Nall v. BSNF Railway Co.*, 917 F.3d 335 (5th Cir. 2019).

> In evaluating a motion for summary judgment, "courts may not evaluate the credibility of the witnesses, weigh the evidence or resolve factual disputes." . . . These matters are left for the fact finder (usual a jury) at trial.

*Monsoor v. Fidelity Life Assn.*, 3:23-cv-04-(Order dated Mar. 31, 2025).

Perhaps the case of *Guzman v. Allstate Assurance Co.* explained this rule of law best when it re-affirmed that "[c]ourts may not evaluate credibility of witnesses, weigh the evidence, or resolve factual disputes . . . [t]he sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021).

Second, the District Court erred when she failed to consider the credible evidence from Plaintiff in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1949). Under this rule, the District Court was compelled to accept as true the accuracy of the photographs showing complete destruction of the home; the fire department reports, pre-fire home inventory, post-fire loss inventories and spreadsheets detailing personal property lost with good faith estimates of actual cash value provided by Plaintiff. Plaintiff submits this documentary evidence creates genuine issues of material fact that State Farm breached the subject insurance contract and that summary judgment was improper. Additionally, Plaintiff will offer sworn testimony to support her claim of breach of contract for the additional amounts

of personal property insurance coverage, which will be corroborated by numerous other witnesses including her sons Jon Gore and Todd Gore; her mother Vikki Goodwin, and others disclosed in discovery. Plaintiff is not required to prove her case of breach of contact with absolutes or clear and convincing type evidence. Under Mississippi law "[a] Plaintiff seeking monetary damages for breach of contract must put into evidence with "as much accuracy as" possible, proof of the damages being sought" but the jury is allowed to draw inferences from the evidence presented. *Bus. Comm., Inc. v. Banks*, 90 So.3d 1221, 1225 (Miss. 2012).

Third, the lower Court's ruling misses the mark completely on the type of claims handling information and analysis State Farm deemed necessary "to satisfy itself of Gore's financial position," especially under the language of the insurance contract. In short, whether or not Ms. Gore possessed the financial means to purchase the personal property she owned at the time of the fire is irrelevant to whether or not she actually owned those items or possessed them in her home and then proved their cash value after the fire. Plaintiff submits State Farm was grasping at straws to find any method possible to deny her property damage claim. Whether Ms. Gore purchased her personal property outright from her own bank accounts, hypothetically took out a personal loan or received her personal property as a gift, State Farm's underwriters certainly believed Ms. Gore was an good insurance risk when they wrote the policy and provided her personal property limits of $380,850 two years prior to the fire. Most significant to the breach of contract case, under the terms of the insurance policy State Farm agreed to "cover [Ms. Gore's] personal property **she owned or used** while it was anywhere in the world." [ROA.131] (emphasis added).

For its defenses, State Farm alleges in its Memorandum that Plaintiff "did not comply with her duties" to provide the documentation or supplementation, but as shown herein Plaintiff

disputes that allegation. Therefore, Plaintiff's breach of contract claim for the remainder of her personal property insurance claim is certainly a genuine issue of material fact that is ripe for consideration and final adjudication by the jury and not a basis for summary judgment. "Summary Judgment is **only** appropriate when "the movant shows there is no genuine dispute as to **any** material fact and the movant is entitled to judgment as a matter of law." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (emphasis added).

**B. Breach of Contract Claim - Dwelling Insurance Coverage**

The Plaintiff's second loss under her breach of contract claim is for the remaining insurance policy limits which are still owed to Ms. Gore under her Dwelling insurance coverage. The subject insurance contract provides that State Farm will

> cover the dwelling and materials and supplies located on or adjacent to the residence premises for use in the construction, alteration, or repair of the dwelling or other structure on the residence premises . . . and will pay for the accidental direct physical loss to the property described in Coverage A [dwelling] caused by the following perils . . . 1. Fire . . . 7. Smoke . . .
>
> [ROA.131-138].

Under the terms of the insurance policy, Ms. Gore purchased policy limits of $507,800.00 for her Dwelling insurance coverage limits prior to the fire. [ROA.118]. State Farm refused to pay Ms. Gore the full insurance payments she is owed for her dwelling that was lost in the subject fire or had smoke damage and breached their contractual promises. This breach was in spite of the fact Ms. Gore provided evidence of her lost dwelling in the form of multiple photographs, fire reports, and a contract to re-build the home for an amount in excess of the limits of dwelling coverage. Perhaps the most significant disputed issue of material fact on this subject is that State Farm's excuse for not paying the full dwelling coverage limits is their allegations there was a small storage room that was adjacent to the residence that was somehow

salvageable, despite the fact State Farm's adjuster admitted in his deposition that storage room had "smoke damage" which is a peril clearly covered under the insurance policy. [ROA.138, 2192].

Plaintiff submitted evidence to District Judge that her home was complete loss and any structure left standing such as the storage room had too much smoke damage in order to be salvageable. The evidence of Plaintiff's total loss was in the form of a report from her contractor [ROA.1359] photographs of the fully destroyed home from multiple angles, the fire department report and pending testimony from the fire chief and Plaintiff's family to confirm the structure was full destroyed. Plaintiff further provided evidence to State Farm under the insurance contract that the actual cash value of the damaged property in the form of a detailed quote and contract to rebuild from her contractor Watermark that showed the cost to rebuild the home would be in excess of $650,000, which exceeded the limits of the insurance coverages for this dwelling loss. [ROA.1344-1358]. Plaintiff also provided State Farm a report from her contractor that the storage room had too much smoke and water damage and was not able to be repaired. [ROA1359]. With this evidence Plaintiff can conclusively prove at trial that State Farm breached its contract with Plaintiff when they failed to pay her the remaining balance owed since the "actual cash value of replacement" exceeded "the applicable limit of liability." For their part, State Farm disputed this evidence or that the home was totally destroyed and thus created a genuine issue of material fact that was not subject to summary judgment.

Perhaps most significant on this issue is the deposition testimony of State Farm's adjuster Damon Stroud who admitted that there was "extensive smoke damage" to one of the rooms State Farm now claims was "salvageable." [ROA.2192] Unfortunately, the lower court refused to consider this critical deposition testimony in her Order and Opinion when she ruled

such evidence was "forfeited." Plaintiff submits this admission by defendant's employee creates a genuine issue of material fact whether the home was a total loss as alleged by Plaintiff or "salvageable" as alleged by State Farm. Either way, such decision should be finally adjudicated by the jury and not via summary judgment. Just as with the personal property claim, the District Court failed to consider the credible evidence from Plaintiff in the light most favorable to Plaintiff and, most critical, the lower Court failed to "draw all reasonable inferences in favor of Plaintiff." *Hanks v. Rogers*, 853 F. 3d 738 (5th 2017).

**C. Expert Testimony Not Necessary to Prove Total Dwelling Loss**

The District Court erroneously held Plaintiff was required under federal law to retain an expert witnesses to prove her breach of contract case that her home was completely destroyed by fire. There is no law compelling Plaintiff to retain an expert witness as the only method to prove her case-in-chief and the authority cited by the lower Court for such a proposition is distinguishable from the facts presented herein.[1] In that case, *Jackson v. State Farm Fire & Cas. Co.*, No 1:23-cv-24, 2024 WL 1183670 (S.D. Miss. Mar. 19, 2024) the District Court was presented entirely different scenario and set of facts where the central issue was the "cause of water damage by a covered peril" under the insurance policy - either from long-term water leak or a sudden covered peril like Hurricane Zeta. *Id*. at 17. Even so, the *Jackson* case allowed the Plaintiff's in that breach of contract case with a homeowner's policy to present evidence of their loss via lay witnesses. *Id*. at 21.

The issues presented by the unreported *Jackson* order are entirely different than Plaintiff

[1] It is also noted that the case is not a reported decision and under our rules of procedure does not act as controlling precedent. While the decision may offer dicta for consideration by the District Court it seems inconsistent for the Court to rely upon unreported Orders from other District Courts while on the other hand claiming Plaintiff failed to make legal citations to case law in her Memorandum when that was not the case.

Gore's case because here we are dealing with a fire which totally destroyed Plaintiff's home which a reasonable juror can determine by viewing Plaintiff's photographs, fire department reports and lay testimony. On remand Plaintiff will prove her case with credible evidence of photographs showing a completely destroyed structure and testimony (albeit disputed) that the subject storage shed had too much water and smoke damage to be salvageable or repaired. Plaintiff will also cross-examine State Farm's adjuster Damian Stroud who admitted that lone part of the structure that remained had "extensive smoke damage" in his deposition. [ROA.2192 Mississippi law and the rules of federal procedure do not force a Plaintiff to pay for expensive expert witnesses to offer testimony in every case or under every factual scenario. In this case Plaintiff accepts her burden to prove her home was a total loss from other credible evidence besides expert witnesses. In response, State Farm can call an expert to testify at trial and his disputed testimony can be considered by the jury prior to making a final verdict.

### D. Bad Faith Claims Handling Claim Not Subject to Summary Judgment

The District Court also granted State Farm summary judgment on Plaintiff's claim for bad faith claims handling and request for punitive damages. Again, Plaintiff submits the District Court breached the standard to impose summary judgment on this claim, especially since the trial was not conducted under Mississippi's bifurcated trial requirement MISS CODE ANN. §11-1-65. Therefore the judgment on whether State Farm acted with the necessary level of willful conduct has not yet been considered by the jury and then the District Judge.

In the September 30, 2025 Order and Opinion Judge Brown ruled "there existed more than a mere scintilla of evidence to support State Farm's position such that a reasonable jury could find in its favor . . . and expressly found without evidence"that State Farm had an arguable basis to deny issuing the maximum payment." [ROA.2242-2243]. Plaintiff submits this ruling is

premature under Mississippi's punitive damages statute, but also violates the standard to grant summary judgment because the Court did not grant reasonable inferences to Plaintiff's evidence and made credibility determinations on disputed evidence. Thus, Plaintiff requests Judge Brown's ruling denying Plaintiff's bad faith claim be vacated to allow Ms. Gore to present her case to a jury, after which the District Court can decide if punitive damages are appropriate for the jury to consider.

Perhaps the most egregious misconduct of State Farm and reason for not paying Ms. Gore's full and complete personal property claim involves the illegal and improper request of State Farm to force Ms. Gore to turn over her private data such has her tax returns and personal bank accounts. State Farm made this outrageous request even though it has been investigating the claim for months and already possessed extensive proof that Plaintiff in fact owned such items of personal property, that these items were in her home at the time of the fire. Under duress Plaintiff initially provided some of her private financial information such as monthly bank statements and financial data to Defendant, but then realized State Farm had no right to demand that she turn over her personal data. When Ms. Gore informed State Farm's adjuster she would not turn over her tax returns or any additional financial information, State Farm then refused to pay any additional personal property claims. Plaintiff submits this misconduct is clear and convincing evidence of State Farm's bad faith claims handling procedures in this claim because Defendant knew it could not request such personal financial data to investigate a claim after-the-fact especially since Plaintiff had already been approved by the Defendant's underwriting department for high value home coverages two years before. When Plaintiff refused to disclosure such private and protected information, State Farm seized this as an illegal opportunity to deny additional insurance payments to Plaintiff.

During the deposition of State Farm's adjuster he was shown his emails demanding Ms. Gore turn over her tax returns and private financial data via a direct request from the management team at State Farm. [ROA.2201-2280]. He admitted that another reason State Farm requests such private information is to "means test" Plaintiff to assertion whether she had the financial ability to purchase the items she used in her new home such as furniture or decorations. This admission shows that State Farm has an unwritten and internal policy to engage in post-claim underwriting when a "large loss" claim is made with improper claims handling tactics to refuse payment on certain personal property claims. Certainly, there is no provision in the policy that allows State Farm to "means test" its insureds before it will pay a valid property damage claim. Moreover, disclosure of private documents like tax returns will never show the actual cash value of Plaintiff's personal property as argued by State Farm's adjuster in his deposition so there is no reason to request such information in the first place.

Defendant's motion for summary judgment on the punitive damages claim is premature under MISS CODE ANN. §11-1-65 and should be denied on these procedural grounds alone. That statute provides that the jury must first determine the amount of compensatory damages to be awarded against Defendant in this case. Thereafter, the statute provides that the Court shall promptly commence an evidentiary hearing to determine whether punitive damages may be assessed by the jury. MISS. CODE ANN §11-1-65 states:

> (1) In any action in which punitive damages are sought:
>
> (a) punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the Defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidence a wilful, wanton or reckless disregard or safety of others, or committed actual fraud.
> (b) in any action in which the claimant seeks an award of punitive damages, the trier of fact that first determine where compensatory damages are to be awarded in and what amount, before addressing any issues related to punitive damages.

> © if, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the trier of fact.
> (d) the Court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

**E. History Bad Faith Litigation in Mississippi**.

The ususal rule that punitive damages are not permitted in a breach of contract case has been modified by our judicial system for very laudable purposes in the context of a large insurer who refuses to pay a valid claim. Frequently an insurer purchases an insurance policy and subsequently files a claim for property damages or medical expenses that may total less than $10,000.00. If the potential for extra contractual damages was not available via the independent tort action of a bad faith claim in Mississippi, then insurance companies could force all of its insured to file lawsuits merely to recover on valid claims. Such a result would be unacceptable as the numerous additional lawsuits would overwhelm the judicial system and countless insureds with valid claims would go unpaid as the insured could not afford to litigate merely to recover its breach of contract damages.

> If at the end of litigation the insurer could do no worse than having to pay the claim plus interest, the unscrupulous insurer would have few incentives to pay claims prior to litigation. Contractual remedies alone do not deter an insurer from resisting payment of valid claims, and if insureds were limited to only contractual recovery in insurance cases, insurers might have the economic incentive to resist rather than to pay contractual claims. Mississippi has recognized that the insured has extra-contractual remedies against the insurer. The most prominent of these remedies is a tort claim for bad faith where, in egregious cases, an insured may be able to recover punitive damages against the insurer. These extra contractual remedies serve to deter an insurer from denying valid insurance claims, and serve also to punish the insurer through assessment of punitive damages.

Jackson, Jeffrey, *Miss. Insur. Law Practice* §13: 1 (2009).

The Mississippi Supreme Court explained the basic frame work and purpose of the independent tort of bad faith conduct by an insurer in *Standard Life Insurance Company v. Veal*, 354 So.2d 239 Miss. (1977).

> If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a Claimant to litigate with no fear that Claimant's maximum recovery could exceed the policy limits plus interest would enable the insurer to pressure the insured to the point of desperation enabling the insurer to force an inadequate settlement or avoid payment entirely.

*Id*. at 248.

Throughout the development of the independent tort for bad faith conduct, the Mississippi Supreme Court has set forth a three pronged basic framework for these actions. First, the trier of fact must consider whether the insurer is in breach of the insurance contract. Second, there must be no arguable reason to deny or fail to pay the valid claim. Third, the insurer's denial or refusal to pay must rise to the level of an independent tort. Miller, Mary *Encyclopedia of Mississippi Law,* §40:77 (2001). Mississippi courts have observed "if the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it." *Bankers Life and Casualty Company v. Crenshaw*, 483 So.2d 254 (Miss. 1985).

**F. <u>Misrepresentation Not Subject to Summary Judgment</u>**

Plaintiff has also submitted credible (albeit disputed) evidence for her claims for misrepresentation and such tort is not subject to summary disposition by the District Court. Applying Mississippi law the courts have routinely held that questions of misrepresentation are not appropriate for summary disposition like summary judgment. *Great So. Nat. v. McCullough*

*Env. Serv.*; 595 So.2d 1282 (Miss. 1992); *Pursue Energy Corp. v. Perkins*, 558 So.2d 349 (Miss. 1990). In order to establish a *prima facie* case of negligent misrepresentation, a plaintiff is required to show:

1. A misrepresentation or omission of fact;
2. That the representation or omission is material or significant;
3. That the Defendant failed to exercise the degree of diligence and expertise the public is entitled to expect of it;
4. That the plaintiff reasonably relied on the defendant's representations;
5. That the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

*Skrmetta v. Bayview Yacht Club*, 806 So.2d 1120 (Miss. 2002); *Spragins v. Sunburst Bank*, 605 So.2d 777 (Miss. 1992).

Numerous cases have long established that "running deep in our law is the notion that a person must respond where his statements or conduct reasonably induce another to rely to his detriment." *Berkline Corp. v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss. 1984) (discussing necessary elements of negligent misrepresentation as opposed to a claim of intentional or fraudulent misrepresentation).

In the September 20, 2025 Order and Opinion the District Judge cited the nine elements necessary to establish a claim of "fraud" under Mississippi law. [ROA.2270]. It is unknown why the District Court inserted this information on a fraud claim or ruled Plaintiff had to establish "the heightened pleading standard with respond to . . . fraudulent misrepresentation" into her Order because Plaintiff has never asserted a claim of fraud or fraudulent misrepresentation against State Farm. It is clear to Plaintiff that the District Court confused her claim for misrepresentation with a claim for fraud or fraudulent misrepresentation even though Plaintiff

never asserted these separate torts. As this Court is aware there is no requirement in the Rules of Civil Procedure for Plaintiff to insert specific language in her Complaint under a "heightened pleading standard" for a her claim of misrepresentation and the Court's ruling granting summary judgment on the claim of misrepresentation is erroneous. FED. R. CIV. P. 9 (2025) (listing requirements for specific pleadings for claim of fraud). Accordingly, the District Court's grant of summary judgment against Plaintiff's claim of misrepresentation should be vacated and that claim remanded for consideration by the jury.

## 7. CONCLUSION

Plaintiff seeks *de novo* appellate review of the District Court's September 30, 2025 Order and Opinion granting summary judgment with an Order to Reverse and Vacate such ruling so that Plaintiff Gore's breach of contract claims for her remaining insurance coverage limits for her dwelling and personal property coverage can be tried to the jury. Plaintiff also requests that the summary judgment ruling be reversed and vacated on her separate claims for punitive damages for State Farm's bad faith insurance claims handling along with her claim of misrepresentation and all such claims be remanded to the District Court for a full trial.

**RESPECTFULLY SUBMITTED** on this the 26th day of February, 2026.

**WENDY GORE**

BY: /s/ Philip Mansour, Jr.
PHILIP MANSOUR, JR., MSB 1857

/s/ Britt Virden
BRITT VIRDEN, MSB 10022

OF COUNSEL:

Philip Mansour, Jr., Esq. (MSB # 1857)
MANSOUR & ADAMS
143 North Edison Street
P. O. Box 1406
Greenville, MS 38702-1406
Telephone: (662) 378-2244
Email: phil@mansouradams.com

Britt Virden, Esq. (MSB #10022)
VIRDEN LAW FIRM, PLLC
143 N. Edison Street
P. O. Box 1871
Greenville, MS 38702-1871
Telephone: (662) 378-9466
E-Mail: bvirden@virdenlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date filed and sent a copy of the foregoing via the electronic filing system, a true and correct copy of the above and foregoing to the following:

Michael F. Myers, Esq.
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Drive
P. O. Box 750
Jackson, MS 39205-0750
myers@curriejohnson.com
*Attorneys for Defendant*

THIS, the 26th day of February, 2026.

*/s/ Phil Mansour*_________________
PHIL MANSOUR